UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO.: 5:05CV240

| | |
|---|---|
| THE HICKORY SPRINGS RETIREMENT PLAN and THE HICKORY SPRINGS INVESTMENT SAVINGS PLAN, <br><br> Plaintiffs, <br><br> vs. <br><br> LYNWOOD J. ANDREWS, THE ESTATE OF PAULA M. ANDREWS (and its Administrator, Lynwood J. Andrews), and G.C. MEDLEY, JR., <br><br> Defendants. | **ORDER** |

**THIS MATTER** is before the Court on the Motions of Defendant Estate of Paula M. Andrews (hereinafter "Defendant" or "Defendant Estate") as follows: (1) Motion for Reconsideration of Order (Document #25) Denying Motion to Set Aside Default Judgment and the Memorandum in Support of that Motion (Documents ##26, 27); Defendant Estate's Supplemental Memorandum (Document #30); Plaintiffs' Memorandum in Opposition to the Motion (Document #33); Defendant Estate's Supplemental Filing (Document #34); and Plaintiffs' Supplemental Memorandum (Document #37); and (2) Plaintiffs' Motion for Attorneys' Fees and Memorandum in Support (Documents ##28, 29). These matters are now ripe for disposition.

For the reasons stated herein, this Court will <u>deny</u> the Defendant Estate's Motion for Reconsideration, and it will <u>deny</u> the Plaintiffs' Motion for Attorneys' Fees.

**BACKGROUND**

The Court set forth the factual background of this dispute in its Order denying Defendant's Motion to Set Aside Default Judgment. Document #25 at 1-2. The Court will adopt that background information and will only set forth the subsequent facts relevant to the disposition of the remaining motions.

On March 21, 2006, the Court granted default judgment for the Plaintiffs, and also awarded Plaintiffs attorney's fees in the amount of $9,857.00.[1] Document #14. On April 13, 2006, after receiving leave of the Court to appear pro hac vice, Donald Medley, attorney for the Defendant Estate, filed a Motion to Set Aside Default and an Answer to the interpleader action.[2] Documents ##17-18. Defendant Estate did not include a brief with its Motion, and the Court ordered it to file one. Document #19. Never having received a brief, on August 3, 2006, the Court denied that motion on those grounds. Document #25.

On August 12, 2006, Defendant Estate filed a Motion to Reconsider and Memorandum in Support. Documents ##26-27. On August 21, 2006, the Defendant Estate filed a Supplemental

---

[1] The assets from both plans total $90,114.62, assuming that the Defendant Estate receives the benefits from the Retirement Fund. If Lynwood Andrews were the beneficiary of the Retirement Fund instead, the benefits from that fund would be reduced from $66,854 to $39,626. Compl. ¶ 23.

[2] Plaintiffs initially objected to Donald Medley's representation of the Estate because he did not claim to be acting on behalf of its administrator, Lynwood J. Andrews, who is also named as a Defendant in this matter in his individual capacity. Document #24 at 6-7. During a phone conference with all parties in December 2007, the Court raised this matter with the Defendants. It noted the confusion of having Donald Medley, as a representative of the Estate and its Administer Andrews, file motions and claims adverse to Mr. Andrews as an individual Defendant. Donald Medley and Edwin Priest, counsel for Mr. Andrews, attempted to explain the situation. Tr. 3-4. Neither the Plaintiffs nor Defendant Andrews raised objections to this explanation and Donald Medley's continued representation of the Defendant Estate. Therefore, the Court will consider that issue to be moot.

Memorandum in Support of that Motion. Document #30. In these documents, the Defendant Estate explains that its failure to file a brief in support of its initial Motion to Set Aside occurred because its counsel never received the Order of the Court requiring it to do so. See Def. Mem. 2; Def. Supp. Mem. 4. Plaintiffs filed a Memorandum in Opposition to this Motion. Document #33. Sua sponte, in early 2007, the Court requested that Defendant Estate file any evidence supporting its contention that all parties had agreed to settle the dispute based upon the decision of Plaintiffs' Committee. See Document #34 at 1. Defendant Estate responded by letter and attachments (Document #34), and the Plaintiffs filed an additional Memorandum in Opposition (Document #37).

In order to resolve the remaining issues in this matter expeditiously, the Court requested that all parties participate in a phone conference on December 20, 2007. All parties except Defendant G.C. Medley, Jr. participated in that phone conference.[3] To the extent that the phone conference required the participation of Defendant Medley, Jr., the Court accepted the representations of Donald Medley, counsel for the Estate, that Defendant Medley, Jr. did not object to the stipulation for the distribution of the assets. See Document #39 (Order of Final Judgment noting that this stipulation resolved the dispute in favor of Defendant Medley, Jr.). The remainder of the phone conference addressed the motions of the Defendant Estate only.

---

[3]A court reporter transcribed the telephone conference. At the Court's request, the reporter provided the Court with a rough transcript of that conference, which it will cite to in this Order.

**DISCUSSION**

**I. Motion to Reconsider**

A party may seek relief from a judgment or order under Rule 60 of the Federal Rules of Civil Procedure. In order to obtain relief under Rule 60(b), the moving party must meet a two-pronged, conjunctive test. See Park Corp. v. Lexington Ins. Co., 812 F.2d 894 (4th Cir. 1987). First, the moving party must show that the motion is timely, that there is a meritorious defense, and that the non-moving party would not be unfairly prejudiced by having the judgment set aside. Id. at 896. Second, the moving party must satisfy one or more of the six grounds for relief set forth in Rule 60(b). Id.

Here, the Defendant Estate seeks relief from two orders entered by this Court.[4] First, the Defendant seeks relief from this Court's Order Denying its Motion to Set Aside Default Judgment (Document #25).[5] Second, and necessarily requiring success on the first, the Defendant seeks to set aside default judgment (Document #14).[6] Therefore, in order to qualify for relief, the

---

[4] Plaintiffs argue that the Motion for Reconsideration is inappropriate because no such relief is provided for under Rule 60(b). Pl. Supp. Resp. 3. However, the Motion of Defendant does not merely seek reconsideration of a legal issue already decided by the Court. See CNF Constructors, Inc. v. Donohoe Const. Co., 57 F.3d 395, 401 (4th Cir. 1995). The Court never considered or decided whether default judgment should be set aside as requested by the Defendant. Therefore, if appropriate grounds exist for the Court to review this matter now, then it may do so. See Footnote 9, infra.

[5] Defendant submitted his Motion to Set Aside Default Judgment (Document #17) without any accompanying brief as required by the Local Rules. LCvR 7.2 (2007). The Court subsequently ordered Defendant to submit a brief in support of its motion. Document #19. The Defendant never filed a brief and the Court denied the Motion to Set Aside on those grounds. See Document #25. Defendant states that it never received the Order of the Court. Def. Mem. 2.

[6] None of the three named Defendants, who were each properly served, responded to the Complaint. See Documents ##7-9. Consequently, upon motion by the Plaintiffs, the clerk made an entry of default and the Court granted default judgment for the Plaintiffs. Documents ##10,

Defendant must demonstrate that it meets the test set forth in Parker for both orders of the Court.

The Defendant argues that its Motion is timely, that it has a meritorious defense, and that setting aside the judgment would not be prejudicial to the Plaintiffs. Def. Supp. Mem. 2-3. The Defendant contends that it qualifies for relief from judgment under Rule 60(b)(1) and Rule 60(b)(6).[7] Id. at 2, 4. The Defendant argues that a meritorious defense exists because, along with the other Defendants, it placed the Plaintiffs on notice that they would all abide by the final decision of the Plaintiffs' Committee as to the disposition of the assets, thus making interpleader unnecessary. Def. Supp. Mem. 2-3. The Plaintiffs vigorously deny this assertion.[8] Pl. Supp. Resp. 6-7, 10, 14. The Plaintiffs further deny that the Defendant qualifies for relief under any part of Rule 60(b). Id. at 3-12.

The Court will deny the Defendant's Motion for Reconsideration because the Defendant does not have a meritorious defense to the underlying action brought by Plaintiffs.[9] A party may

---

11, 14.

[7]Plaintiffs cautiously construed the Defendant's filing of supplemental materials (Document #34) as a potential argument for relief under 60(b)(3) [fraud]. Pl. Resp. 10-12. However, since the Defendant did not explicitly invoke those grounds for relief, the Court will not construe its filings as such.

[8]During the phone conference with the Court, Plaintiffs note that their last recorded contact with Defendants was on July11, 2005 when Defendants informed them that there was no chance of resolving this matter. Tr. 11. Although Defendants admit to this statement, they retort that they also conveyed their agreement to abide by the Committee's decision. Id. Even assuming the truth of the Defendants' claim, they never memorialized the agreement in any manner.

[9]The Court finds that the lack of a meritorious defense is fatal to the Defendant's Motion to Set Aside Default judgment (Document #17), denied by the Court in the second of the two orders (Document #14) from which Defendant seeks relief. In so finding, the Court does grant the Defendant relief from its more recent order denying Defendant's Motion to Set Aside Default Judgment (Document #25). The Court finds that the failure of counsel to file a brief in support of

file an interpleader action against multiple defendants "when their claims are such that the plaintiff is or *may be* exposed to double or multiple liability." Fed. R. Civ. Pro. 22(1) (emphasis added); see also 28 U.S.C. § 1335(a)(1); 7 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, Federal Practice and Procedure § 1707 (2d ed. 1986). The principle purpose of interpleader is to absolve the stakeholder of the expense and risk of defending an action in which it acknowledges that it has no claim to the property in question. See Equitable Life Assurance Soc. v. Jones, 679 F.2d 356, n.2 (4th Cir. 1982).[10] The rules permitting interpleader actions are permissive. WRIGHT, MILLER & KANE § 1704 at 500 and § 1707 at 522 (1986). An interpleader action is appropriate when the stakeholder legitimately fears multiple liability. Id. § 1704 at 501. As a prerequisite, the claiming parties must actually be adverse to one another. Id. § 1705 at 507. Consequently, interpleader is not appropriate if one party "has dropped his claim and the fear of multiple litigation or liability is groundless." Id. at 508.

---

Defendant's motion constitutes excusable neglect under 60(b)(1). See Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 811 (4th Cir. 1988) (finding that "when a party is blameless and the attorney is at fault, the former interests control"); Document #26 at 1 (counsel for the Estate did not receive a copy of the Court's order requiring a brief; the Court ordinarily excuses non-compliance with an order that counsel did not receive). However, since Defendant only requested relief in the aggregate, this point is largely academic.

 Furthermore, finding that the Defendant fails to meet the first prong required for prevailing on a motion under Rule 60 regarding its order of default judgment (Document #14), the Court finds it unnecessary to determine whether the Defendant properly satisfies one or more of the grounds for relief under Rule 60(b).

 [10]The facts of Equitable Life are similar to those of this case. There, the plaintiff interpled the assets of an insurance policy claimed by one party under a divorce agreement, and claimed by another party as a named beneficiary. 679 F.2d at 357-358. The majority opinion found that interpleader was appropriate. Id. at n2. The Defendants here, however, do not dispute that interpleader is appropriate in this type of controversy. See WRIGHT, MILLER & KANE § 1705 at 509 (stating that a dispute over assets focused on an alleged change of beneficiaries is precisely the type of controversy for which interpleader is appropriate). Rather, the Defendant contends that interpleader was unnecessary because the claims of Defendants were not adverse.

6

In its initial motion, the Defendant offered nothing more than assertions as to why Plaintiffs' interpleader action was improper. See Document #17. In its subsequent motion, the Defendant first argued that it assumed that the action would be dismissed by Plaintiffs because all Defendants allegedly informed Plaintiffs that they had all agreed to abide by the decision of Plaintiffs' Committee. Def. Supp. Mem. 2 (Document #37). The Defendant then asserts that a Chancery Court in Mississippi might soon issue an order stating that there was no controversy regarding distribution of the assets.[11] Id. at 4.

Sua sponte, the Court requested that the Defendant file a supplement to its Motion for Reconsideration with any evidence that supported its claim that the Defendants had reached an agreement on distributing these assets and that they had notified the Plaintiffs about this agreement. See Document #34 at 1. The Defendant responded by letter, to which it attached various documents, including the decisions of the Plaintiffs' Committee as to how it would distribute the assets. Document #34. In the letter, counsel for Defendant states that he informed Plaintiffs that his client, the Defendant Estate, would not challenge the decision of the Plaintiffs' Committee. Id. at 1-2. One of the attached documents is a letter from Edwin Priest, counsel for Defendant Andrews (in his individual capacity), stating that he recalls agreeing with Mr. Medley to not dispute the final decision of the Plaintiffs' Committee, and further that he conveyed this

---

[11]During the phone conference held by the Court, Donald Medley clarified that the mention of the Chancery Court hearing was an attempt to procure a statement by Lynwood J. Andrews, under oath, that he never intended to dispute the final decision of the Plaintiffs' Committee. Tr. 15-16. Mr. Medley stated that the hearing never occurred, and therefore this point is moot. Tr. 16.

7

agreement to the Plaintiffs prior to the Committee's final decision.[12]  Document #34-2 at 9-10.

The Defendant effectively argues that interpleader is improper because the claims of the Defendants were not adverse at the time the action was filed.  First, as indicated by the plain language of Rule 22, the prospective threat of vexatious litigation is sufficient to warrant an interpleader action.  FED. R. CIV. P. 22.  Here, the Defendants actively disputed the disposition of the assets up through Mr. Andrews' appeal to the Committee.  Furthermore, as the Plaintiffs' Committee notes in its final decision letter, this Circuit's law on the disputed issue is not settled, and thus grounds for further appeal existed.  See Document #34-2; WRIGHT, MILLER & KANE § 1704 at 504.  Therefore, at the time the Committee issued its final decision, Plaintiffs had a reasonable and legitimate fear of continued litigation.

The allegations that the Defendants agreed to abide by the Committee's decision do not detract from the reasonableness of the Plaintiffs' belief that interpleader was appropriate.  As noted by the Plaintiffs, the Defendants never memorialized their alleged agreement.  The only evidence that the Defendants presented to the Court were the unsubstantiated averments of Mr. Medley and Mr. Priest that they had an agreement and that they had informed Plaintiffs of it.  Without an enforceable agreement, Defendant Andrews maintained a right to file suit or otherwise dispute the final decision of the Committee.  To wit, by the time of the phone conference in late

---

[12]During the phone conference with the Court, neither Mr. Medley nor Mr. Priest could identify any evidence or writing, other than alleged phone conversations, documenting such an agreement.  Both Mr. Medley and Mr. Priest thought that the agreement had been memorialized. Tr. 7, 10-11, 17.  However, neither party has been able to provide the Court with any evidence to substantiate this.  Furthermore, in response to the Plaintiffs argument that no written agreement was ever submitted to them, Mr. Medley responded that "we never got the chance to do that because they filed this action before they even gave us a decision." Tr. 6.  While Mr. Medley recalls sending a letter to the Court (Tr. 10-11), that letter appears to be simply his response to the Court's request for evidence of an agreement, Document #34.

8

December 2007, the Defendants continued to possess that right since that had not yet filed an agreement resolving this interpleader action.[13]

Finally, the Defendant questions the motivation of Plaintiffs since this interpleader action was filed the day after Plaintiffs mailed, and presumably before the Defendants received, the final decision of the Committee. However, suspicions and coincidental timing do not warrant the dismissal of an interpleader action. Although courts may evaluate whether the beliefs and actions of the parties in interpleader were in good faith, courts rarely dismiss an interpleader action on such "nebulous" grounds. See WRIGHT, MILLER & KANE § 1704 at 504. To hold otherwise would penalize the Plaintiffs for their overly cautious, even if a bit zealous, legal strategy. While this interpleader action has benefitted Plaintiffs by the award of attorneys' fees, it cannot be said that the sole purpose of this action was to profit in that respect. The Defendants had any and every opportunity to provide the Plaintiffs or the Court with a formal agreement, or at least some notification in writing, about their alleged agreement.[14] By failing to do so, the Defendants failed to provide adequate assurances that there would be no further claims against the Plaintiffs. Consequently, Plaintiffs were within their rights to file an interpleader action to ensure that this matter would be resolved at minimal cost to themselves and their clients.

---

[13]During that phone conference, the parties noted their agreement as to how the assets should be distributed. Upon this information and stipulation, the Court entered a final judgment, finally resolving this matter.

[14]Although Defendant Estate did eventually file an Answer to the Complaint (Document #18, amended by Document #30-2), it never filed a Motion to Dismiss on the grounds it now claims. While this failure is not fatal to a Rule 60(b) Motion, it does indicate a lack of substance and credibility in the arguments of the Defendant.

**II. Motion for Attorneys' Fees**

The Plaintiffs filed a second Motion for Attorneys' Fees for costs related to the Defendant's Motion to Set Aside Default Judgment and Defendant's Motion to Reconsider the Order of the Court denying that motion.[15] Documents ## 28, 29. The Defendants have not filed a response to this Motion.

A district court possesses the complete discretion to award attorneys' fees under ERISA.[16] See 29 U.S.C. § 1132(g)(1); Carolina Care Plan, Inc. v. McKenzie, 467 F.3d 383 (4th Cir. 2006). In determining whether to award fees, a court may consider a variety of factors, including: a) the degree of the opposing party's culpability or bad faith, b) the ability of the opposing party to satisfy such an award, c) whether such an award would deter other persons acting similarly, d) whether the party requesting the fees sought to benefit participants and beneficiaries of the plan, and e) the relative merits of the parties' positions. See McKenzie, 467 F.3d at 390. For the following reasons, the Court will deny Plaintiffs' Motion for an award of additional attorney's fees.

The Court finds that none of the five factors counsel in favor of awarding the Plaintiffs

---

[15]In their brief, Plaintiffs state that they are requesting attorney's fees for their response to the "unsupported and unfounded" Motion to Set Aside of Defendant Estate for which it did not submit a brief. Pl. Br. 1. However, in calculating the fee amount, Plaintiffs include a significant amount of time (11.4 hours of the 15 hours total claimed) for their efforts in responding to the more substantive Motion to Reconsider, which the Defendant Estate did support with a brief. Document #29-2 at 1; see also p. 11, infra.

[16]The Plaintiffs may have, but did not, request attorney's fees for having filed an interpleader action. See WRIGHT, MILLER & KANE § 1719 at 637-644; Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Saxon, 2007 U.S. App. Lexis 24219, *2 (4th Cir. 2007) (requesting attorneys' fees as the stakeholder in an interpleader action). Thus, the Court will not consider awarding attorney's fees on these grounds.

additional attorneys fees at this point in the litigation. Defendants were not culpable and did not act in bad faith in advancing these motions. See McKenzie, 467 F.3d at 390 (finding that culpability and bad faith require more than "mere negligence or error").[17] Rather, errors of the attorney aside, the Defendants advanced a potentially meritorious argument that an alleged agreement precluded the filing of this action. Although not ultimately successful, a losing litigation strategy does not constitute culpability or error. See McKeown v. Blue Cross Blue Shield of Ala., 497 F. Supp. 2d 1328, 1333-34 (S.D. Ala. 2007).

Additionally, the ability of the Defendants to satisfy the award of additional fees is quite uncertain. While there is a "ready source of cash," Plaintiffs glibly ignore that any fees, much like the previous award of almost $10,000 (or about ten percent of the total benefits), will come from the beneficiaries. Defendant Medley, Jr. did not file these motions and thus is not responsible for them. Defendant Estate, who filed the motions, ultimately will pass these funds to the trust of a minor of the deceased, and the Court is quite hesitant to dilute those funds any further. See generally Sun Life Assurance Co. v. Tinsley, 2007 U.S. Dist. Lexis 34383, *6 (W.D. Va. 2007) (noting that an award of attorney's fees should not substantially deplete the interpleader funds; citing a case finding a fee award constituting 10% of the stake appropriate). Any deterrent effect provided for by the award of fees has already been amply achieved by the first award.

Finally, the award of additional fees will only reward the plans, not their participants and beneficiaries. The overall equities of this case do not favor the award of any additional attorney's fees. The facts and circumstances of this matter were not complicated. After their decision, Plaintiffs knew that only one party, Defendant Andrews, had the right to object. Plaintiffs filed

---

[17]See Footnote 9, supra.

this action one day after the Committee decision.[18]  For these efforts, Plaintiffs then recouped almost $10,000 in attorney's fees, an award that they would not ordinarily be entitled to save for the Defendants' failure to respond.  See Sun Life Assurance Co. v. Thomas, 735 F. Supp. 730, 733 (W.D. Mich. 1990) (noting that interpleading funds subject to conflicting claims is in the ordinary course of business for employee welfare benefit plans).  To the extent that the Plaintiffs were not immediately discharged from this action, the first award was more than sufficient compensation.

    **IT IS, THEREFORE, ORDERED** that the Motion for Reconsideration by the Defendant Estate is denied;

    **IT IS FURTHER ORDERED** that the Motion for Attorneys' Fees by the Plaintiffs is denied.

**SO ORDERED.**

    Signed: July 2, 2008

Richard L. Voorhees
United States District Judge

---

[18] Plaintiffs seem to have sent the Committee Decision Letter to Defendants by certified mail.  See Document #34-2.  Therefore, it also seems that Plaintiffs filed this action before Defendants had received notice of the final decision of the Committee.